**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ANGEL CASTRO GARCIA,** | ) | |
| **BOP Reg. #17481-003,** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | **CIVIL ACTION NO. 1:23-00160-JB-N** |
| **v.** | ) | |
| | ) | **CRIMINAL ACTION NO. 1:19-00033-JB-1** |
| **UNITED STATES** | ) | |
| **OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

**ANGEL CASTRO GARCIA**, a federal prisoner proceeding without counsel (*pro se*), filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 dated April 26, 2023 (Doc# 248), seeking relief from the judgment entered against him in the above-numbered criminal action.[1] The assigned District Judge has referred Garcia's § 2255 motion to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. §636(a)-(b), Rule 10 of the Rules Governing Section 2255 Proceedings for the United States District Courts, and S.D. Ala. GenLR 72(a). *See* S.D. Ala. GenLR72(b); (7/7/2026 electronic reference notation). Under S.D. Ala. Gen. LR 72(a)(2)(R), the undersigned is authorized to require responses, issue orders to show cause and any other orders necessary to develop a complete record, and to prepare a report and recommendation to the District Judge as to the appropriate

[1] All "Doc#" citations herein refer to the docket of the above-numbered criminal action. The companion civil action has been opened for administrative and statistical purposes only, and does not contain or receive any filings.

disposition of the § 2255 motion, in accordance with 28 U.S. §636(b)(1) and Rule 8(b) of the Rules Governing Section 2255 Proceedings.

Following examination of the § 2255 motion under Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Court ordered the Government to answer or otherwise appropriately respond to the motion, and also set a deadline for Garcia's reply.[2] (*See* Docs# 253, 261). The Government timely filed its response in opposition (Doc# 266), and Garcia timely filed a reply (Doc# 270) to the response. Garcia's § 2255 motion (Dos# 248) is now under submission.

Upon due consideration of the § 2255 motion, the Government's response, Garcia's reply, and the record of prior proceedings under Rules 7 and 8(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, the undersigned finds that neither expansion of the record nor an evidentiary hearing is warranted, and **RECOMMENDS** that Garcia's § 2255 motion be **DENIED** and **DISMISSED with prejudice**.

## I. *Factual Background and Procedural History*

For purposes of these findings and recommendations, the undersigned adopts in part the factual summary of the trial evidence contained in the decision of the Eleventh Circuit Court of Appeals affirming Garcia's convictions on direct appeal:

---

[2] *See* Rule 5(d) of the Rules Governing Section 2255 Proceedings for the United States District Courts ("The moving party may file a reply to the respondent's answer or other pleading. The just must set the time to file unless the time is already set by local rule.").

On Christmas Eve 2018, the United States Coast Guard intercepted a small, homemade boat on the verge of sinking in choppy waters of the high seas between the Dominican Republic and Puerto Rico. The crew of a Coast Guard airplane first spotted the boat while patrolling the narcotics-trafficking route northeast of the Dominican Republic and northwest of Puerto Rico. The guardsmen considered the boat suspicious because it carried a large number of fuel containers, lacked a visible name or registration number, and used no navigation lights. They reported it to a nearby Coast Guard cutter, the *Richard Dixon*, which detached a small "over-the-horizon" boat to intercept the suspicious boat.

The Coast Guard's boat caught up to the suspicious boat about 50 nautical miles from the coast of the Dominican Republic. It approached with its lights off and shined a spotlight when it was 20 or 30 feet away from the suspicious boat. Coast guardsmen saw "frantic" activity aboard the suspicious boat as two men threw things overboard. When the guardsmen stopped the boat, they found six bales in the water tied to each other and to a seventh bale still inside the boat.

***

A Coast Guard officer asked the men "who was the master, who was in charge." No one answered, so he asked who piloted the boat. One of the men answered that they all took turns. The others appeared to agree, based on their body language. The boat had a hand tiller that each person could operate for only about three hours at a time. The men said they were traveling from Santo Domingo in the Dominican Republic to Dorado, Puerto Rico….

***

Then the guardsmen searched the smugglers' boat. They found that the serial number had been filed off the outboard motor. And the boat contained no fishing or recreational equipment and only a few personal items.

***

…The over-the-horizon boat returned the smugglers to the *Richard Dixon*. On board, the four men identified themselves as Pedro Dino Cedado Nunez, Manely Enriquez, Angel Castro Garcia, and Mike Castro Martinez.

The *Richard Dixon* brought the smugglers to Saint Thomas in the Virgin Islands about 10 days later. There, a Homeland Security agent met the

> smugglers and flew with them to Mobile, Alabama. He interviewed all four men individually that day.
>
> ***
>
> The bales weighed about 180 kilograms, and the four men stipulated that they contained cocaine.

(Doc# 226, PageID.1488-1492)*; United States v. Cedado Nunez*, 1 F.4th 976, 981–982 (11th Cir. 2021). To the extent it is necessary, this Court will further cite to the trial transcript when discussing the merits of Garcia's substantive claims.

Garcia and his co-defendants were initially arrested on a criminal complaint (Doc# 1), and Garcia was appointed counsel at his initial appearance on January 4, 2019. (*See* Docs# 14, 18). On January 31, 2019, the grand jury for this district returned an initial indictment that charged the defendants with the following violations of the Maritime Drug Law Enforcement Act (MDLEA): conspiracy to distribute and possess with intent to distribute approximately 182 kilograms of cocaine on board a vessel subject to U.S. jurisdiction contrary to Title 46 U.S.C. §70503(a)(1) in violation of Title 46 U.S.C. §70506(b) (Count One); and possession with intent to distribute approximately 182 kilograms of cocaine on board a vessel subject to the jurisdiction of the United States in violation of Title 46 §70503(a)(1) (Count Two). (Doc# 40). Garcia, along with his co-defendants, was arraigned on February 12, 2019, and pleaded not guilty to both counts. (Doc# 46).

Prior to trial, the Government moved for a pretrial ruling on jurisdiction and venue (Doc# 110). The motion was supported by the statements of U.S. Coast Guard members that the involved vessel was 50 nautical miles northeast of the Dominican Republic and had no indicia or documentation of vessel nationality or registry, so they

were unable to ascertain who the master was. Further, when asked who was in charge, the suspects advised that all four of them had driven the vessel. (Doc#110-1, PageID.248-52). For their part, Garcia and two other defendants filed motions to dismiss the indictment for lack of jurisdiction. (Docs# 111, 112, and 116).

At a pretrial hearing, the Court made a preliminary finding of jurisdiction, stating that the boat, known as a "yola," was a stateless vessel in international waters. (Doc# 144, PageID.410). The Court observed that the United States recognizes a foreign nation's territorial waters up to 12 nautical miles from the coast of that nation and, here, the U.S. Coast Guard gained control of the vessel approximately 50 nautical miles off the coast of Cabo San Rafael, Dominican Republic.[3] (Doc# 144, PageID.409-10). The Court noted that the vessel yielded no flag, registration documents, or indicia of nationality and that no crew member claimed nationality or registry of the vessel. (Doc# 144, PageID.410). The Court rejected the argument that an evidentiary hearing was required but stated it would hear any additional evidence on jurisdiction at trial outside of the presence of the jury. (Doc# 144, PageID.413). The Court also made a finding as to venue. (Doc# 144, PageID.411). Garcia's counsel objected, citing the need for an evidentiary hearing on jurisdiction and Confrontation Clause and due process concerns. (Doc# 144, PageID.413-417).

[3] Although Garcia raised the issue that the Coast Guard's initial observation of the vessel was 15 miles off the coast, the Court reasoned that the relevant point was where the vessel was apprehended. (Doc#144, PageID.410).

At trial, Government witnesses with the Coast Guard and the Department of Homeland Security testified the yola was intercepted approximately 50 nautical miles from the Dominican Republic. (Doc# 207, PageID.1052, 1072). Chief Petty Officer Alejandro Cordova, who was fluent in Spanish, asked the crew members "who was the master, who was in charge," but no one replied. (Doc# 207, PageID.1332). When he asked who was driving the boat, one responded they all took turns. (Doc# 207, PageID.1132). He asked the others if they all took turns, and he interpreted their body language in response as agreement. (Doc# 207, PageID.1147-48).

The defendants again objected to jurisdiction at trial. (Doc# 208, PageID.1376-1377). All defendants unsuccessfully moved for acquittal on the grounds that government failed to prove jurisdiction at the close of the government's case and again after they rested. (Doc# 208, PageID.1280, 1376-78). The Court concluded that the yola was a stateless vessel[4] and the Court had subject matter jurisdiction. (Doc# 208, PageID.1378). The jury found Garcia and his codefendants guilty of both charges. (Doc# 208, PageID.1381-83).

---

[4] The undersigned notes that the relevant statute uses the term "vessel without nationality," 46 U.S.C. § 70502(c)(1)(A), but the parties and many of our cases colloquially refer to such vessels as "stateless" vessels. *See, e.g.*, *United States v. Alfonso*, 104 F.4th 815, 818 n.1 (11th Cir. 2024); *United States v. Hernandez*, 864 F.3d 1292 (11th Cir. 2017); *United States v. Cruickshank*, 837 F.3d 1182 (11th Cir. 2016); *United States v. Campbell*, 743 F.3d 802 (11th Cir. 2014). The Court utilizes the terms "stateless" and a "vessel without nationality" interchangeably herein.

The Court sentenced Garcia to concurrent terms of 188 months in prison on each count,[5] followed by a 5-year term of supervised release. (Doc# 185). All defendants appealed their convictions to the Eleventh Circuit. (Doc# 173, 176, 180, 199).

Garcia advanced three arguments on direct appeal: (1) that the government did not prove the defendants' boat was a "vessel subject to the jurisdiction of the United States" under the MDLEA; (2) that the District Court erred in failing to grant his motion for acquittal because the government failed to prove an essential element of the offenses for which he was convicted; and (3) the District Court abused its discretion and violated his right to present a complete defense when it excluded testimony concerning the circumstances of his transportation to the U.S. on board a Coast Guard cutter. (Doc# 266-1, PageID.1955, 1972-1974). The Eleventh Circuit affirmed his conviction on June 17, 2021, in a published opinion. *Cedado Nunez*, 1 F.4th 976; (Doc# 226).

With respect to jurisdiction, Garcia argued that there was insufficient evidence the vessel was a "vessel without nationality" subject to U.S. jurisdiction under the MDLEA because "[a]fter learning that the men took turns piloting the [boat], the Coast Guard failed to ask the men, individually or collectively, if they wished to make a claim of nationality or registry for the vessel." (Doc# 266-1, PageID.1975-1976). He reasoned that because the men took turns piloting the boat, they took turns being

---

[5] Subsequent to filing the instant Motion to Vacate, Garcia filed a Motion for Reduction Under Retroactive Sentencing Guideline Amendment 821. (Doc# 277). The motion was granted, and his sentence was reduced to 151 months. (Doc# 289).

"individuals in charge" who could have each made a claim for registry or nationality for the vessel upon request. (*Id.* at PageID.1976). Garcia cited the Second Circuit's decision in *United States v. Prado*, 933 F.3d 121 (2d Cir. 2019), in support of his "direct request" argument. (*Id.* at PageID.1978). Garcia also relied on *United States v. Guerro*, 789 Fed. App'x 742 (11th Cir. 2019) (unpublished) (holding the government did not meet its burden of proving jurisdiction under the MDLEA where Coast Guard failed to ask for the individual in charge and failed to request a claim of nationality or registry for the vessel) and *United States v. Medina*, 793 Fed. App'x. 850 (11th Cir. 2019) (holding that MDLEA jurisdiction and statelessness were established where Coast Guard asked all assembled crew members who was the master and, when none responded, asked if any crew member wished to make a claim of nationality or registry of the vessel). (Doc# 266-1, PageID.1976-1978)

The Eleventh Circuit concluded that the District Court had jurisdiction under the MDLEA; that neither the statute nor the Confrontation Clause required an evidentiary hearing on jurisdiction because the MDLEA made it clear that jurisdiction was a preliminary question of law to be determined by the trial judge, and the defendants never identified any contested facts or evidence they wanted to introduce; and that Garcia was not deprived of the opportunity to present a complete defense. *Cedado Nunez*, 1 F.4th 976; (Doc# 226).

Examining jurisdiction, the Eleventh Circuit observed that the three ways to establish that a vessel is "without nationality" and "subject to the jurisdiction of the

United States" set forth in § 70502(d)(1)[6] did not constitute an exhaustive list, as Section 70502(d)(1) used the word "includes," rather than the phrase "includes only" used in the next subsection of the statute. *United States v. Cedado Nunez*, 1 F.4th at 984. The Eleventh Circuit found that the yola fell within the meaning of "vessel

---

[6] At the time of Garcia's indictment, 46 U.S.C. §70502(d)(1) provided:

> **(d) Vessel without nationality.—**
>
> **(1) In general.**--In this chapter, the term "vessel without nationality" includes--
>
> **(A)** a vessel aboard which the master or individual in charge makes a claim of registry that is denied by the nation whose registry is claimed;
>
> **(B)** a vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel; and
>
> **(C)** a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality.

46 U.S.C.A. § 70502(d)(1).

46 U.S.C. § 70502(d)(1) was amended on December 23, 2022, *see* James M. Inhofe National Defense Authorization Act for Fiscal Year 2023, Pub. L. No. 117-263, § 11519, 136 Stat. 2395, 4142 (2022), to add § 70502(d)(1)(D), which defines "vessel without nationality" as "a vessel aboard which no individual, on request of an officer of the United States authorized to enforce applicable provisions of United States law, claims to be the master or is identified as the individual in charge, and that has no other claim of nationality or registry under paragraph (1) or (2) of subsection (e)." The amendment is not relevant to the instant case because Garcia was indicted prior to the amendment.

without nationality" under both the MDLEA and international law because "[i]t carried no documents, it flew no flag, and it had no name or identifying numbers that would permit entry into a national registry." *Id.* at 985. Further, "[n]o one on the vessel verbally claimed that it had any nationality, nor was the vessel 'in a position to provide' evidence of any nationality." *Id.* The Eleventh Circuit observed that "a Coast Guard officer asked the smugglers who was the master or individual in charge, and no one claimed to be....The record contains no evidence of a hierarchy amount the smugglers." *Cedado Nunez*, 1 F.4th at 985. The Eleventh Circuit stated that "[t]he smugglers' boat had no master or individual in charge who could make a verbal claim of registry under Section 70502(e)" and found that the Coast Guard was not required to ask the crew to make a claim of nationality in the absence of the master or individual in charge. *Id.* at 985-986.

The Eleventh Circuit held that yola was a stateless vessel and the District Court had jurisdiction under the MDLEA:

> We conclude that the district court had jurisdiction under the Act. The smugglers' vessel had no indicia of nationality: no registry papers, identification markings, flag, or verbal claim of nationality by anyone, let alone a master or individual in charge. In the absence of any claim of registry, the vessel lacked nationality.

*Id.* at 986.

The defendants jointly filed with the United States Supreme Court a petition for a writ of certiorari to the Eleventh Circuit on the issue of whether the ways to identify stateless vessels enumerated in §70502(d)(1) were exhaustive. (Doc# 268-2, PageID.2119). The Court denied the petition on May 2, 2022, *Cedado Nuñez v. United*

*States*, 142 S. Ct. 2675 (Mem), 212 L. Ed. 2d 762, thus making Garcia's conviction final. *See Drury v. United States*, 507 F.3d 1295, 1297 (11th Cir. 2007) (holding that a federal prisoner's conviction becomes final for purposes of AEDPA's limitations period when the Supreme Court denies a petition for certiorari). Garcia is deemed to have filed the present § 2255 motion, his first, on April 26, 2023, the date he signed it. *See Daniels v. United States*, 809 F.3d 588, 589 (11th Cir. 2015) (per curiam) ("Under [the Antiterrorism and Effective Death Penalty Act]'s statute of limitations, a federal prisoner must ordinarily file his §2255 petition within one year of the date on which his judgment of conviction becomes final. We apply the prison mailbox rule, under which a *pro se* prisoner's court filing is deemed filed on the date on the date it is delivered to prison authorities for mailing. We assume, absent evidence to the contrary, that a prisoner delivered a filing to prison authorities on the date that he signed it." (citations and quotations omitted)).

A one-year statute of limitations period applies for filing a §2255 motion to vacate. 28 U.S.C. §2255(f). This one-year period begins to run following one of four possible triggering events. *Id.* The relevant trigger here is "the date on which the judgment of conviction becomes final," *id.* § 2255(f)(1), and Garcia does not argue another triggering event applies. Garcia's conviction became final on May 2, 2022. His § 2255 motion was filed less than one year later, and there is no dispute that it was timely filed.

In the form motion, Garcia lists two grounds: (1) the District Court was not the proper venue and (2) the District Court lacked jurisdiction. (Doc# 248, PageID.1743-

1744). Garcia submitted a 40-page memorandum in support of his motion. (Doc# 248-1). While organized under the general headings of "Ground One - The District Court of Alabama Was Without Venue Provision To Try Movant For the Offense In This Case" and "Ground Two - The District Court Was Without Jurisdiction To Try Movant In This Case" (Doc# 248-1, PageID.1759, 1768), Garcia asserts additional constitutional claims in his memorandum, in particular, ineffective assistance of counsel claims, a Felonies Clause challenge to jurisdiction under the MDLEA, and a Sixth Amendment challenge to the jurisdictional inquiry process of the MDLEA. (*See* Doc# 248-1).

Construing Garcia's § 2255 motion and supporting memorandum liberally, the Court summarizes the grounds for relief raised as follows:

(1) the Southern District of Alabama was an improper venue;

(2) the Court erred as a matter of law in finding jurisdiction under 46 U.S.C. §70502(d)(1)(B) because there was insufficient evidence the yola was a "vessel without nationality" under the MDLEA;

(3) Congress exceeded its authority under the Felonies Clause because it treats vessels as stateless that would otherwise not be recognized as without nationality under international law;

(4) Section 70504(a) of the MDLEA is ambiguous on its face and violates the Sixth Amendment insofar as the judge's determination of jurisdiction encroaches on the fact-finding role of the jury;

(5) Ineffective assistance of counsel, including

  (a) Failure to object to venue;

  (b) Counsel stood by as a "potted plant" and failed to introduce or elicit on cross-examination any evidence concerning jurisdiction;

  (c) Counsel was ignorant of the law;

(d) Counsel failed to give competent and professional advice;

(e) Counsel failed to investigate and present appropriate litigation; and

(f) Counsel did not explain the law to him "as applicable in lieu of legislative and judicial developments in the law, prior to taking him to trial."

(*See* Doc# 248-1). For the sake of clarity and efficiency of review, the Court has (re)numbered Garcia's claims within this Report and Recommendation.

Garcia also filed a Reply in which he attempts to raise the following additional claims for the first time in this §2255 proceeding:

(6) The vessel was in the "fishery zone" of the Dominican Republic, yet there was no evidence the Dominican Republic was contacted to establish jurisdiction under 46 U.S.C. §70502(c)(1)(E);

(7) Jury Instruction Number 4 (prohibiting jurors from visiting or viewing premises or places involved in the case) violated the trial-by-jury requirement of the Sixth Amendment;

(8) The Court's limiting defendants' counsel to cross-examining government witnesses on jurisdictional evidence outside of the presence of the jury caused extreme prejudice and violated Eleventh Circuit precedent;

(9) The trial court's grant of the government's motion *in limine* to bar defendants from introducing evidence about the conditions of confinement on board the U.S. Coast Guard vessel was an abuse of discretion;

(10) His trial counsel failed to "stay abreast of," and bring to Movant's attention, the 2018 amendments to the First Step Act extending safety valve eligibility to cases brought under the MDLEA, which Movant would have considered in evaluating whether to enter a plea or go to trial;

(11) The prosecutor committed prosecutorial misconduct by presenting false Google satellite photos showing a larger vessel than a yola;

(12) "[T]he reading of the MDLEA as to Movant is ambiguous and violates the Supremacy Clause"; and

(13) Liberally construing his reply, Garcia seems to argue that the Coast Guard's involvement in his apprehension violated the Posse Comitatus Act.

(*See* Doc# 270, PageID.2179-2194).

## II. *Legal Standards*

Pursuant to 28 U.S.C. §2255, a person in federal custody may move to vacate, set aside, or correct his sentence. This statute permits collateral challenges in four circumstances: (1) the imposed sentence violated the Constitution or laws of the United States, (2) the Court exceeded its jurisdiction to impose the sentence, (3) the imposed sentence exceeded the maximum authorized by law, or (4) the imposed sentence is otherwise subject to a collateral attack. 28 U.S.C. §2255(a).

However, "a collateral challenge, such as a §2255 motion, may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam) (citing *United States v. Frady*, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982) (collecting cases)). "Once the defendant's chance to appeal has been waived or exhausted," a court is "entitled to presume he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present his federal claims to a federal forum." *United States v. Frady*, 456 U.S. 152, 164, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982). "Because collateral review is not a substitute for a direct appeal, the general rules have developed that: (1) a defendant must assert all available claims on direct appeal, and (2) relief under 28 U.S.C. §2255 is reserved for transgressions of constitutional rights and for that narrow compass of

other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Id.* at 1232 (internal citations, quotations, and footnote omitted).

The first general rule is commonly known as procedural default (not to be conflated with the procedural bar), which "is neither statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011) (citing *Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003)). The procedural default rule "applies to all claims, including constitutional claims," and "the question is not whether legal developments or new evidence has made a claim easier or better, but whether at the time of the direct appeal the claim was available at all." *Lynn*, 365 F.3d at 1234-35 (citations omitted). As the Eleventh Circuit recently clarified:

> The terms "procedurally barred" and "procedurally defaulted" have distinct meanings. A procedural bar prevents a defendant from raising arguments in a §2255 proceeding that he raised and we rejected on direct appeal. *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014) (collecting cases). A defendant can overcome a procedural bar when … there is a change in law. *See Davis v. United States*, 417 U.S. 333, 342, 94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974).
>
> By contrast, a "procedural default" occurs when a defendant raises a new challenge to his conviction or sentence in a §2255 motion. *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004). If a defendant fails to raise an issue on direct appeal, he may not present the issue in a §2255 proceeding unless his procedural default is excused. *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011). To overcome a procedural default, a defendant must show either (1) cause and prejudice, or (2) a miscarriage of justice, or actual innocence. *Id.*

*Seabrooks v. United States*, 32 F.4th 1375, 1383-84 (11th Cir. 2022). A movant on collateral review can "avoid the procedural default bar … if the alleged error is jurisdictional." *United States v. Bane*, 948 F.3d 1290, 1294 (11th Cir. 2020) (citation omitted).

Under the "cause and prejudice" exception, a movant may overcome procedural default "by showing cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error." *McKay*, 657 F.3d at 1196. To show cause, "a defendant must prove that some objective factor external to the defense impeded counsel's efforts to raise the claim previously." *Lynn*, F.3d at 1235, n. 20 (internal quotations and citation omitted). Ineffective assistance of counsel may satisfy the cause exception to a procedural bar, but only where the claim of ineffective assistance of counsel has merit. *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000). Cause must also result in "actual prejudice" – that is, it must have "worked to his actual and substantial disadvantage." *Lomelo v. United States*, 891 F.2d 1512, 1515-16 (11th Cir. 1990).

The "actual innocence" exception means exactly what it says. *See McKay*, 657 F.3d at 1196 (citation omitted) (explaining "movant's procedural default is excused if he can show that he is actually innocent either of the crime of conviction or, in the capital sentencing context, of the sentence itself."). This narrow exception permits a court to allow a defendant to proceed under §2255 "despite his failure to show cause for procedural default if a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Lynn*, 365 F.3d at 1235-36 (citations and

internal quotation omitted). Actual innocence in this context – whether applied to the crime itself or the associated sentence – "means factual innocence, not mere legal insufficiency." *McKay*, 657 F.3d at 1197-98 (citations omitted).

The federal habeas statute provides that when a § 2255 motion is filed, "[u]nless the motion and the files and records of the case conclusive show that the prisoner is entitled to no relief, the court shall … grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. 28 U.S.C. §2255(b).

> A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *Aron* [*v. United States*], 291 F.3d [708,] 715 [(11th Cir. 2002)] (quoting *Holmes v. United States*, 876 F.2d 1545, 1552 (11th Cir. 1989)). "[A] petitioner need only allege—not prove—reasonably specific, non-conclusory facts that, if true, would entitle him to relief. *Id.* at 715 n. 6. However, a district court need not hold a hearing if the allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Holmes*, 876 F.2d at 1553 (quoting *United States v. Guerra*, 588 F.2d 519, 520-21 (5th Cir. 1979)); *see, e.g., Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir. 2004) ("Because the … affidavits submitted by Lynn amount to nothing more than mere conclusory allegations, the district court was not required to hold an evidentiary hearing on the issues and correctly denied Lynn's §2255 motion.").

*Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (footnote omitted). *Accord Diveroli v. United States*, 803 F.3d 1258, 1263 (11th Cir. 2015). In making this determination, a court must "liberally construe *pro se* filings, including *pro se* applications for relief pursuant to §2255." *Winthrop-Redin*, 767 F.3d at 1215. With these standards in mind, the undersigned turns to Garcia's claims for relief.

## III. *Analysis*

### a. MDLEA

The MDLEA prohibits any person from "knowingly or intentionally ... possess[ing] with intent to manufacture or distribute, a controlled substance" on board "a vessel subject to the jurisdiction of the United States," 46 U.S.C. § 70503(a)(1) and (c)(1), and from conspiring to do the same, *id.* § 70506(b). Section 70503(a)(1) provides that, "[w]hile on board *a covered vessel*, an individual may not knowingly or intentionally ... possess with intent to manufacture or distribute, a controlled substance." *Id.* § 70503(a)(1) (emphasis added). The definition of a "covered vessel" includes "a vessel subject to the jurisdiction of the United States." *Id.* § 70503(c). Under the statute, a "vessel subject to the jurisdiction of the United States" includes "a vessel without nationality." *Id.* § 70502(c)(1)(A).

Congress amended the MDLEA in 1996 to provide that "[j]urisdiction of the United States with respect to a vessel subject to this chapter is not an element of an offense." 46 U.S.C. § 70504(a); *United States v. Cabezas-Montano*, 949 F.3d 567, 586 (11th Cir. 2020). Section 70504(a) goes on to state that "[j]urisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge." 46 U.S.C. § 70504(a). Moreover, in 2017 Congress amended the MDLEA's venue provision, 46 U.S.C. § 70504(b), in 2017 to state as follows: "A person violating section 70503 or 70508 — (1) shall be tried in the district in which such offense was committed; or (2) if the offense was begun or committed upon the high seas, or

elsewhere outside the jurisdiction of any particular State or district, may be tried in any district."

**1. Venue**

Garcia argues that venue was improper in the Southern District of Alabama. (Doc# 248, PageID.1743; and Doc# 248-1, PageID.1759). Garcia conclusorily asserts that "[v]enue is proper only where the acts constituting the offense, the crime's essential conduct of elements took place." (Doc# 248-1, PageID.1764). Alternatively, he argues that venue for his crimes was governed not by § 70504(b), but by 18 U.S.C. § 3238, which states:

> The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought; but if such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of the last known residence of the offender or of any one of two or more joint offenders, or if no such residence is known the indictment or information may be filed in the District of Columbia.

Garcia asserts that § 3238 required he be tried in the District of the U.S. Virgin Islands, where he was first brought following his arrest at sea. (Doc# 248-1, PageID.1763-64).

In response, the Government argues that Garcia cannot mount a direct challenge to venue, which is typically waived if not asserted prior to trial. (Doc# 266, PageID.1933). The Government takes the position that a mere allegation of improper venue is not cognizable under § 2255, reasoning that a defendant may waive venue, and that Garcia has not shown he suffered any prejudice from a trial in the Southern District of Alabama. Alternatively, the Government argues that, even if the issue is

cognizable on collateral review, it is procedurally defaulted in this case due to Garcia's failure to press venue in the initial stages. (Doc# 266 at PageID.1935). Finally, the Government argues that Garcia is not entitled to relief on his venue claim because he has not established an obvious legal error with respect to venue, which the Government contends is governed by the venue provision of the MDLEA, and because Garcia failed to identify any ambiguity in the statute. (Doc# 266, PageID.1936-1938). In his Reply, Garcia equates venue with subject matter jurisdiction and argues that waiver cannot be presumed from a silent record. (Doc# 270, PageID.2169-2171).

Although the Eleventh Circuit does not appear to have addressed this precise issue, other courts have found that a claim of improper venue is not subject to collateral attack in a § 2255 proceeding. *See Alvarez-Cuan v. United States*, No. 8:12-CR-519-T-27AEP, 2020 WL 5407559, at *6–7 (M.D. Fla. Sept. 9, 2020); *Ogrizovich v. United States*, 805 F.2d 1035 (6th Cir. 1986); *Entrekin v. United States*, 508 F.2d 1328, 1330 (8th Cir. 1974). Whether a claim is cognizable in a §2255 proceeding is a "threshold issue." *Lynn v. United States*, 365 F.3d 1225, 1242 (11th Cir. 2004). Assuming without deciding that Garcia's venue claim is cognizable under § 2255, it is nevertheless both procedurally defaulted and without merit.

"Venue is non-jurisdictional and can be waived." *United States v. Salazar-Marcano*, No. 22-12182, 2023 WL 3244596, at *2 (11th Cir. May 4, 2023) (per curiam) (citing *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165 167-68 (1939) and *Baeza v. United States*, 543 F.2d 572, 573 (5th Cir. 1976)) (holding venue challenge was waived where plea agreement did not reserve the right to appeal denial of motion

to dismiss for improper venue and plea colloquy did not include request to reserve that right)).[7] Garcia failed to raise this argument in either a Rule 12(b) motion before the District Court or on direct appeal.

To overcome this procedural default, Garcia must show either (1) cause and prejudice, or (2) a miscarriage of justice, or actual innocence. *McKay,* 657 F.3d at 1196. In his form § 2255 motion, Garcia states that he failed to raise his improper venue claim on direct appeal due to ineffective assistance of counsel. (Doc# 247, PageID.1682). To the extent Garcia asserts such ineffective assistance as cause to excuse his procedural default, he cannot succeed because, as explained below, his venue challenge is meritless, and counsel cannot be ineffective for failing to raise a meritless issue. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (counsel "is not ineffective for failing to raise claims reasonably considered to be without merit" (quotation omitted)); *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (per curiam) ("Failing to make a meritless objection does not constitute deficient performance."). Additionally, Garcia does not claim in his §2255 motion that he is actually innocent, and he has not presented any evidence of actual innocence. Therefore, Garcia has procedurally defaulted his improper venue claim.

Garcia's venue claims are also meritless. First, the United States Constitution gives Congress plenary power to set venue for criminal offense committed outside of any state, such as the ones at issue here, without regard to where any part of the

[7] The Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit decided prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

crime was committed. Article III, Section 2, Clause 3 of the Constitution provides that when a crime is "*not committed within any State*, the Trial shall be at such Place or Places as the Congress may by Law have directed." U.S. Const. art. III, § 2, cl. 3 (emphasis added). True, the later-ratified Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law...." U.S. Const. amend. VI. However, the United States Supreme Court has long interpreted the Sixth Amendment's "previously ascertained" clause as indicating that amendment "has reference only to offenses against the United States committed within a state." *Cook v. United States*, 138 U.S. 157, 181, 11 S. Ct. 268, 34 L. Ed. 906 (1891). The Court explained:

> The second section of article 3 had provided, in respect to crimes committed in the states, that the trial by jury should be had within the state where the crime was committed. The sixth amendment added the further guaranty, in respect to the place of trial, that the district should have been previously ascertained by law, leaving the trial of offenses not committed within any state to be controlled by the second section of article 3. The requirement in the latter section is that the trial 'shall be at such place or places as the congress may by law have directed.' 'As crimes,' said Mr. Justice Story, commenting upon this section, 'may be committed on the high seas and elsewhere, out of the territorial jurisdiction of a state, it was indispensable that in such cases congress should be enabled to provide the place of trial.' 2 Story, Const. § 1781.

*Id.* at 181–82. *See also Zicarelli v. Dietz*, 633 F.2d 312, 324 (3d Cir. 1980) ("[W]hen an offense was not committed within a state but in territory assigned to a district for judicial purposes, the 'previously ascertained' provision was held to be inapplicable

and Congress could, pursuant to Article III, Section 2, clause 3, fix another district for trial of such offenses after they were committed." (citing *Cook*, 138 U.S. at 181-82) (reaffirmed in *United States v. Cuevas-Almonte*, 156 F.4th 319, 330 (3d Cir. 2025)).

In an attempt to avoid a straight-forward application of the MDLEA's venue provision, Garcia contends §§ 70503 and 70504 are ambiguous and must be read *in pari materia* with § 3238, which he argues controls here. (Doc# 248-1, PageID.1766-1767). Garcia does not specify how § 70504(b) is ambiguous. Instead, he relies on *United States v. Ahumado-Avedano*, 872 F.2d 367 (11th Cir. 1989), a case interpreting the meaning of the term "United States" in 46 U.S.C. 1903(f), an older venue provision in the MDLEA. (Doc# 248-1, PageID.1763-1764).

The prior MDLEA venue statute, 46 U.S.C. 1903(f), provided:

> Any person who violates this section shall be tried in the United States district court at the point of entry where that person enters the United States, or in the United States District Court of the District of Columbia.

In *Ahumedo-Avendano*, the Eleventh Circuit had to determine whether the naval installation at Guantanamo Bay, where the defendant was first bought but which was outside of any judicial district, was part of the "United States" for purposes of determining venue under the MDLEA. *United States v. Ahumedo-Avendano*, 872 F.2d 367, 371 (11th Cir. 1989). Relying on *Ahumedo-Avendano*, Garcia argues that 46 U.S.C. § 70504's venue provision is ambiguous regarding the meaning of "United States" and whether the district courts in Puerto Rico and the U.S. Virgin Islands had authority to try offenders for violations of the MDLEA. The problem with this

argument is that the MDLEA's venue provision was revised in 2017[8] and now differs from the language at issue in *Ahumedo-Avendano*, *see supra.*

Section 70504(b)'s unambiguous discretionary venue provision permits Garcia to be tried in any district. The MDLEA "makes clear that 'if the offense was begun or committed upon the high seas, or elsewhere outside the jurisdiction of any particular State or district,' the accused 'may be tried in any district.' " *United States v. Gonzales-Cahvec*, 750 F. App'x 853, 855 (11th Cir. 2018) (quoting 46 U.S.C. § 70504(b)(2)). That provision clearly applies to Garcia's crimes, and the Court need not rely on a canon of construction to interpret the unambiguous statute. *See United States v. Warren*, 820 F.3d 406, 408 (11th Cir. 2016) ("Courts generally apply *in pari materia* only when a legal text is ambiguous.")). Moreover, Garcia's argument still fails to the extent there is a conflict between the two statutes. "The Eleventh Circuit has held that when two statutes conflict, the later-enacted statute controls to the extent it conflicts with the earlier-enacted statute. Moreover, a specific statutory provision trumps a general one." *Miccosukee Tribe of Indians of Fla. v. U.S. Army Corps of Eng'rs*, 619 F.3d 1289, 1299 (11th Cir. 2010) (citation omitted). Under either

---

8

> [T]he Crimes Act of 1790, enacted by the First Congress, … provided that trial for [high seas] offenses "shall be in the district where the offender is apprehended, or into which he may first be brought." Ch. 9, § 8, 1 Stat. 112, 114 (1790). Congress…codified that provision's modern progeny as Section 3238. Until 2017 the MDLEA's venue provision likewise provided venue to the district where the accused was first brought. Pub. L. No. 109-304, § 10(2), 120 Stat. 1485, 1688 (2006).

*United States v. Cuevas-Almonte*, 156 F.4th 319, 331 (3d Cir. 2025).

of those rules, § 70504(b) controls here. The current version of § 70504(b) was enacted in 2017, well after § 3238 was last amended in 1963, *see* Pub. L. No. 88-27, 77 Stat. 48 (2022). Moreover, § 70504(b)(2) sets venue for certain specified high seas offenses, while § 3238 only applies to high seas offenses generally.

Garcia's prosecution in the Southern District of Alabama complied with both the Constitution and venue statutes. His improper-venue claim is without merit.

**2. Jurisdiction**

Garcia contends this Court lacked jurisdiction to try him for the subject offenses, and that the finding that it had jurisdiction under the MDLEA was erroneous as a matter of law. (Doc# 248, PageID.1744; Doc# 248-1, PageID.1761, 1768). He challenges both the constitutionality of the MDLEA and whether the government met its burden of proof that the yola was a "vessel without nationality" subject to United States jurisdiction under the MDLEA. (*See* Doc# 248-1). In response, the Government acknowledges that jurisdictional defects cannot be procedurally defaulted, but argues that Garcia has not called into question the Eleventh Circuit's ruling on the jurisdictional issue in his direct appeal, which is binding precedent. (Doc# 266, PageID.1941).

"Habeas corpus has long been available to attack convictions and sentences entered by a court without jurisdiction." *Yency Nunez v. United States*, 858 Fed. App'x 320, 322 (11th Cir. 2021) (per curiam) (unpublished) (quoting *United States v. Addonizio*, 442 U.S. 178, 185, 99 S. Ct. 2235, 60 L. Ed. 2d 805 (1979)). "While a habeas proceeding generally cannot 'do service for an appeal,' a challenge to a court's

jurisdiction is an exception." *Id.* (internal quotations and citations omitted). "Because parties cannot by acquiescence or agreement confer jurisdiction on a federal court, a jurisdictional defect cannot be waived or procedurally defaulted—instead, a judgment tainted by a jurisdictional defect must be reversed." *McCoy v. United States*, 266 F.3d 1245, 1249 (11th Cir. 2001) (citation omitted). *See also* 28 U.S.C. § 2255(a) ("A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground…that the court was without jurisdiction to impose such sentence…").

The Eleventh Circuit has "interpreted the 'on board a vessel subject to the jurisdiction of the United States' provision of the MDLEA as a congressionally imposed limit on a court's subject matter jurisdiction." *United States v. Mejia*, 734 F. App'x 731, 732 (11th Cir. 2018). "Jurisdiction…is not an element of an [MDLEA] offense[,]" and jurisdictional issues "are preliminary questions of law to be determined solely by the trial judge." 46 U.S.C. §70504(a). "The government bears the burden of establishing that the statutory requirements of MDLEA subject-matter jurisdiction are met." *United States v. Cabezas-Montano*, 949 F.3d 567, 588 (11th Cir. 2020) (citation omitted). "Due process in the context of extraterritorial jurisdiction requires only that the exercise of jurisdiction not be arbitrary or fundamentally unfair." *United States v. Gonzales-Cahvec*, 750 F. App'x 853, 856 (11th Cir. 2018) (citing *United States v. Batson*, 818 F.3d 651, 669 (11th Cir. 2016)).

Garcia argues that the Court erred as a matter of law in finding jurisdiction under 46 U.S.C. §70502(d)(1)(B) under the circumstances of the case. (Doc# 248-1,

PageID.1771-1772). Garcia contends there was insufficient evidence to support the court's finding that the vessel was a "vessel without nationality" subject to the jurisdiction of the United States under the Maritime Drug Law Enforcement Act. (*Id.*, PageID.1769-1771). He admits the vessel was "on the high seas between the Dominican Republic and Puerto Rico," when it was intercepted by the U.S. Coast Guard, but contends that there was insufficient proof that it was a stateless vessel.[9] (Doc# 248-1, PageID.1758).

Garcia relies on the Second Circuit case of *United States v. Prado*, 933 F.3d 121 (2d Cir. 2019), in support of his position that an officer of the United States must request a claim of registry and the master or individual in charge must fail to answer this request before a vessel can be deemed stateless under § 70502(d)(1)(B). (Doc# 248-1, PageID.1774). He concedes that the U.S. Coast Guard officials asked the defendants for the master of the vessel, but he argues the U.S. Coast Guard officers should have gone further and asked the crew members to make a claim of nationality or registry for the vessel. (*Id.*, PageID.1775-1776). Garcia contends that "[b]ecause the Coast Guard failed to ask…it is equally possible one of the four defendants possessed the authority as the individual in charge to make the registry of nationality for the vessel." (*Id.*, PageID.1775). Based on this, Garcia argues the Government

[9] Garcia briefly states, in passing, in his supporting memorandum that the vessel was "seized … in Archipelagic waters of Dominican Republic, which falls under the United Nations Convention of the Law of the Sea…." (Doc# 248-1, PageID.1699) He does not tie this contention to any specific jurisdictional or constitutional claim.

failed to prove there was no one on board who could make a claim of registry or nationality. (*Id.*, PageID.1776).

This is the same argument that Garcia raised, and the Eleventh Circuit expressly rejected, on direct appeal. *See* (Doc# 266-1, PageID.1975-1978); *Cedado Nunez*, 1 F.4th at 984-86. A procedural bar prevents a defendant from raising the same arguments in a § 2255 proceeding that were raised and rejected on direct appeal. *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014) (collecting cases). "Once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255[,]" *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) (internal quotation marks omitted), unless "there is an intervening change in law." *Seabrooks v. United States*, 32 F.4th 1375, 1383 (11th Cir. 2022). Garcia's claim that there was insufficient evidence the vessel was a "vessel without nationality" subject to U.S. jurisdiction under the MDLEA was adversely decided against him by the Eleventh Circuit on direct appeal, *see Cedado Nunez*, 1 F.4th at 984-86, and there is no indication an intervening change in controlling law would change that result. Thus, Garcia is procedurally barred from attempting to re-litigate this issue by means of a § 2255 claim, regardless of its jurisdictional nature. *See United States v. Roberts*, 79 F. App'x 368, 370 n.2 (10th Cir. 2003) (unpublished) ("[B]ecause Roberts' assertions regarding the district court's

jurisdiction were raised and decided on direct appeal, they cannot be raised in a § 2255 motion…”).[10]

### 3. Constitutionality of the MDLEA

While much of Garcia's memorandum is devoted to the issue of whether the prosecution met its burden of demonstrating that the yola was a stateless vessel under the MDLEA, Garcia also argues the MDLEA is unconstitutional. First, Garcia argues that MDLEA's definition of stateless vessel in § 70502(d)(1)(C) does not comport with international law and that Congress exceeded its authority under the Felonies Clause because it treats vessels as stateless that would otherwise not be recognized as without nationality under international law. (Doc# 248-1, PageID.1768-

---

[10] The undersigned is mindful that defects in subject matter jurisdiction cannot be waived or procedurally defaulted. *See McCoy*, 266 F.3d at 1249. However, Garcia's claim that there was insufficient evidence the defendants' boat was a "vessel without nationality" to confer subject matter jurisdiction is not procedurally barred because it was not raised on direct review; it is procedurally barred because it *was* raised, and decided adversely, on direct appeal. *See Seabrooks*, 32 F.4th at 1383-84 (explaining the difference between "procedurally barred" and "procedurally defaulted" with regard to § 2255 motions).

The Government does not argue procedural bar in its response. However, in *Day v. McDonough*, 547 U.S. 198, 126 S. Ct. 1675, 164 L. Ed. 2d 376 (2006), the Supreme Court confronted the question of 'whether a federal court lacks authority, on its own initiative, to dismiss a habeas petition as untimely, [if] the State has answered the petition without contesting its timeliness,' 547 U.S. at 202, 126 S. Ct. at 1679, or has erroneously conceded the timeliness issue, see id. at 205, 126 S. Ct. at 1681. The Supreme Court ruled that a district court may act on its own initiative to dismiss a petition in such a circumstance, provided the court 'accord[s] the parties fair notice and an opportunity to present their positions.' Id. at 210, 126 S. Ct. at 1684." *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 654 (11th Cir. 2020) (per curiam). *Day*'s holding is readily applicable to procedural-bar claims. To the extent either party objects to the *sua sponte* invocation of procedural bar here, that party can raise it as part of the objections permitted to this Report and Recommendation.

1769, 1788-1789). Second, Garcia argues § 70504(a) of the MDLEA is "ambiguous on its face, because a requirement of judicial fact-finding, instead of jury fact-finding, violates the trial by jury requirement of the Sixth Amendment of the Constitution." (*Id.*, PageID.1787). Each of these claims is foreclosed by Eleventh Circuit precedent.

As to the first argument, § 70502(d)(1)(C) defines one way that a vessel may qualify as a "vessel without nationality" and describes a "vessel about which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." These circumstances are not present in this case, as there was no master or individual in charge who made a claim of registry for the yola. His argument that § 70502(d)(1)(C) is unconstitutional as applied to him lacks merit.

More importantly, the Eleventh Circuit recently considered and rejected Garcia's exact Felonies-Clause argument with respect to § 70502(d)(1)(C). In *United States v. Canario-Vilomar*, the Eleventh Circuit rejected an argument on direct appeal that Congress had "overstepped its bounds" by defining a "vessel without nationality" in 46 U.S.C. § 70502(d)(1)(C) to include vessels that are not recognized as stateless under international law. 128 F.4th 1374, 1376 (2025). Reviewing the jurisdictional challenge *de novo*, the Eleventh Circuit found that Congress was not constrained by international law in crafting its definition of a stateless vessel or in defining the boundaries of the high seas, expressly stating that "the Felonies Clause is not limited by customary international law." 128 F.4th 1374, 1380–81 (11th Cir. Feb. 18, 2025) (quoting *United States v. Alfonso*, 104 F.4th 815 826 (11th Cir. 2024)).

The Eleventh Circuit held that Congress "did not act beyond the grant of authority in the Felonies Clause when defining … a 'vessel without nationality.' " *Id.* at 1380–81. *Accord United States v. Martinez*, 172 F.4th 1306, 1313 (11th Cir. 2026) (per curiam). Accordingly, Garcia's Felonies-Clause and international law arguments are foreclosed by Eleventh Circuit precedent.[11]

As to Garcia's claim that § 70504(a) violates the Sixth Amendment right to trial by jury, the Eleventh Circuit has held that, "because the MDLEA's jurisdictional requirement goes to the subject-matter jurisdiction of the courts and is not an essential element of the MDLEA substantive offense, it does not have to be submitted to the jury for proof beyond a reasonable doubt." *United States v. Cabezas-Montano*, 949 F.3d 567, 587 (11th Cir. 2020) (*citing United States v. Tinoco*, 304 F.3d 1088, 1109-12 (11th Cir. 2002); *United States v. Valois,* 915 F.3d 715, 722 (11th Cir. 2019); *United States v. Cruickshank*, 837 F.3d 1182, 1192 (11th Cir. 2016); *United States v. Campbell,* 743 F.3d 802, 809 (11th Cir. 2014); and *United States v. Rendon* 354 F.3d 1320, 1326-28 (11th Cir. 2003)). Garcia's argument that 46 U.S.C. §70504(a) violates

[11] Embedded in this claim is a brief argument that the exercise of jurisdiction over him violated the "hot pursuit" doctrine of international law. (Doc# 248-1, PageID.1779-80). However, a person charged with a violation of the MDLEA "does not have standing to raise a claim of failure to comply with international law as a basis for a defense."46 U.S.C. § 70505; *see United States v. Hernandez*, 864 F.3d 1292, 1301–02 (11th Cir. 2017). Such a claim "may be made only by a foreign nation" and "does not divest a court of jurisdiction." 46 U.S.C. § 70505. Accordingly, "any battle over the United States'[s] compliance with international law in obtaining MDLEA jurisdiction should be resolved nation-to-nation in the international arena, not between criminal defendants and the United States in the U.S. criminal justice system." *United States v. Canario-Vilomar*, 128 F.4th 1374,1379 (11th Cir. 2025) (quoting *Hernandez*, 864 F.3d at 1302).

his Sixth Amendment rights is also foreclosed by Eleventh Circuit precedent and is without merit.

**b. Ineffective Assistance of Counsel**

Although not clearly identified as a standalone constitutional claim in his form motion, Garcia does assert in his form motion that he failed to raise his arguments concerning venue and jurisdiction on appeal due to ineffective assistance of counsel.[12] (Doc# 248, PageID.1743, 1745). Further, Garcia expressly argues in his memorandum in support of his § 2255 motion that ineffective assistance of counsel deprived him of his right to Due Process under the Fifth Amendment and his Sixth Amendment rights. (Doc# 248-1, PageID.1754). Specifically, Garcia argues that his trial counsel "failed to raise objections based on the defects in the institution of the prosecution's case before this court."[13] (Doc# 248-1, PageID.1759).

Garcia argues that trial counsel's failure to object to venue constitutes ineffective assistance of counsel that caused him extreme prejudice. (Doc# 248-1, PageID.1767-68). Garcia acknowledges that his trial counsel moved for an acquittal on the basis of lack of jurisdiction but contends that his counsel's arguments "lacked substance" and that trial counsel failed to cross examine the Coast Guard witnesses

---

[12] The undersigned observes that Garcia's counsel challenged whether the United States met its burden of proving jurisdiction under the MDLEA both in the trial court and on direct appeal. (Doc# 111; Doc# 208, PageID.1280-1281, 1376-1377; Doc# 266-1).

[13] Although Garcia does not specify whether his ineffective assistance claims are directed at trial counsel or appellate court, the Court deduces they are directed at trial counsel based on the errors alleged.

at trial concerning alleged jurisdictional defects in the institution of the prosecution. (*Id.* at PageID.1760). Garcia also generally alleges, without further explanation, factual support, or citations to the record, that trial counsel was "ignorant of the law and was not … capable of addressing erroneous findings of facts for clear error," "failed to give competent and professional advice," "failed to investigate and present appropriate litigation," and "was a mere 'potted plant.' " (Doc# 248-1, PageID.1757-1758, 1774). Garcia submits that counsel "did not explain the law to [Garcia], as applicable in lieu of legislative and judicial developments in the law, prior to taking him to trial." (*Id.*, PageID.1757).

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel. U.S. CONST. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 684-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "[F]ailure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought up in a later, appropriate proceeding under §2255." *Massaro v. United States*, 538 U.S. 500, 509, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003). Indeed, "in most cases a motion brought under §2255 is preferable to direct appeal for deciding claims of ineffective assistance." *Id.* at 504. *See also United States v. Curbelo*, 726 F.3d 1260, 1267 (11th Cir. 2013) ("An ineffective assistance claim should usually be raised in a motion under 28 U.S.C. §2255," (citing *United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010))). "To establish an ineffective assistance of counsel claim, a defendant must show that (1) 'counsel's representation fell below an objective standard of reasonableness' and (2) that such failure prejudiced him in that 'there is

a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (per curiam) (quoting *Strickland*, 466 U.S. at 687-688, 694).

" 'Conclusory allegations of ineffective assistance are insufficient.' " *Wilson v. United States*, 962 F. 2d 996, 998 (11th Cir. 1992) (per curiam) (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991). Moreover, "[b]cause both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) (citation omitted). *See also Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014) ("A habeas petitioner claiming ineffective assistance of counsel must carry his burden on both *Strickland* prongs, and a court need not address both prongs if the defendant has made an insufficient showing on one."); *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail."). "The *Strickland* test is not easily met; … 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between. []' " *Johnson*, 256 F.3d at 1176 (quoting *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (citation omitted))).

"The test for ineffectiveness is not whether counsel could have done more; perfection is not required." *Waters*, 46 F.3d at 1518. *Accord, e.g., Burt v. Titlow*, 571 U.S. 12, 24, 134 S. Ct. 10, 187 L. Ed. 2d 348 (2013) ("[T]he Sixth Amendment does not

guarantee the right to perfect counsel; it only promises the right to effective assistance…"). "A lawyer can almost always do something more in every case. But the Constitution requires a good deal less than maximum performance." *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992).

> In evaluating the first, or "performance," prong of *Strickland*, "[j]udicial scrutiny of counsel's performance must be highly deferential." [*Strickland*, 466 U.S.] at 689, 104 S. Ct. at 2065. Because retrospective evaluation of a lawyer's performance can be difficult, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that … the challenged action might be considered sound trial strategy." *Id.* (internal quotations omitted). A petitioner must identify specific acts or omissions that were not the result of reasonable professional judgment, and a court should deem these acts or omissions deficient only if their "were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S. Ct. at 2066. Simply put, the deference afforded an attorney's decision is great and the bar for proving a Sixth Amendment violation is high. In light of the "strong presumption" in favor of competence,"…in order to prove deficient performance, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).
>
> Under the second, or "prejudice," prong of *Strickland*, a petitioner must "affirmatively prove prejudice" by showing that counsel's errors "actually had an adverse effect on the defense." 466 U.S. at 693, 104 S. Ct. at 2067. This requires a showing of more than "some conceivable effect on the outcome of the proceeding." *Id.* Instead, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2068. Although this standard is difficult to meet, it is significant that a petitioner must show only a reasonable probability that the outcome would have been different; he "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693, 104 S. Ct. at 2068. When evaluating this probability, "a court hearing on an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695, 104 S. Ct. at 2069.

*Brownlee v. Haley*, 306 F.3d 1043, 1059-60 (11th Cir. 2002). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. In making the competency determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." *Kimmelman v. Morrison*, 477 U.S. 365, 394, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986) (citing *Strickland*, 466 U.S. at 689-91) (citations and quotations omitted).

To the extent Garcia seeks to raise an independent claim that counsel was ineffective in failing to raise a venue objection, counsel is not ineffective in failing to raise an argument that has no legal basis. *Freeman v. Attorney General, State of Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008). The MDLEA "makes clear that 'if the offense was begun or committed upon the high seas, or elsewhere outside the jurisdiction of any particular State or district,' the accused 'may be tried in any district.' " *United States v. Gonzales-Chavec*, 750 F. App'x 853, 855 (11th Cir. 2018) (unpublished) (quoting 46 U.S.C. §70504(b)(2)). Any ineffective assistance of counsel claim related to Garcia's venue challenge is likewise without merit for the reasons outlined above.

With respect to jurisdiction, Garcia appears to fault his trial counsel for failing "to introduce or elicit on cross examination on the jurisdictional defects in the institution of the Prosecution" and, instead, moving for a judgment of acquittal on the ground of the government's failure to prove jurisdiction. (Doc# 248-1, PageID.1760).

Garcia does not develop this argument any further. Liberally construing this statement, he appears to fault his trial attorney relative to cross-examining the Government's witnesses and possibly for failing to call other witnesses to offer testimony concerning jurisdiction.

"The decision as to whether to cross-examine a witness is 'a tactical one well within the discretion of a defense attorney." *Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001) (citations omitted). A petitioner cannot establish an ineffective assistance of counsel claim unless he shows at least "a single specific instance where cross-examination arguably could have affected the outcome of either the guilt or sentencing phase of the trial." *Id.* "Ineffective assistance ... will not be found merely because 'other testimony might have been elicited from those who testified.' " *Id.* (quoting *Waters*, 46 F.3d at 1514).

Under this reasoning, Garcia's ineffective assistance claim fails. Garcia has not identified any specific questions that should have been asked of any specific Coast Guard witnesses. The Eleventh Circuit concluded that Garcia's boat was a stateless vessel because "[t]he smugglers' vessel had no indicia of nationality: no registry papers, identification markings, flag, or verbal claim of nationality by anyone, let alone a master or individual in charge." *Cedado Nunez*, 1 F. 4th at 986. Garcia has not shown how a cross-examination of the Government's witnesses would have elicited any new facts that would have would have affected the "vessel without nationality" determination or changed the outcome of his trial. Garcia's conclusory allegations regarding cross-examination of the Coast Guard witnesses do not

establish ineffective assistance of counsel. Garcia's attorneys pursued his jurisdictional objections throughout the proceedings.

Garcia also generally alleges, without further explanation, factual support, or citations to the record, that trial counsel was "ignorant of the law and was not … capable of addressing erroneous findings of facts for clear error," "failed to give competent and professional advice," "failed to investigate and present appropriate litigation," and "was a mere 'potted plant.' " (Doc# 248-1, PageID.1756-1757, 1774). Garcia submits that counsel "did not explain the law to [Garcia], as applicable in lieu of legislative and judicial developments in the law, prior to taking him to trial." (*Id.*, PageID.1757).

To the extent these contentions can be considered independent claims for relief, they do not afford Garcia any. Garcia's factually unsupported, bare allegations are insufficient to support a claim of ineffective assistance of counsel. Garcia has not identified any facts counsel failed to investigate or evidence counsel failed to obtain. "Speculation is insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation." *Aldrich v. Wainwright,* 777 F.2d 630, 636 (11th Cir.1985). Garcia does not explain what counsel did, what counsel failed to do, how it prejudiced Garcia, or how the outcome of his case may have been different. "A petitioner is not entitled to an evidentiary hearing…when his claims are merely conclusory allegations unsupported by specifics…" *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (quotation marks omitted). He fails to show that his counsel's performance fell below an objective

standard of reasonableness or that he was prejudiced by counsel's allegedly deficient performance. Consequently, he is entitled to no relief on this claim.

The undersigned does not find merit in Garcia's ineffective assistance of counsel claims.

**c. New Arguments Raised in Reply**

In his reply dated September 27, 2023, Garcia attempts to raise new claims for the first time. (Doc# 270). Buried within his other arguments, Garcia raises new claims, numbered by the Court as follows:

(6) The vessel was in the "fishery zone" of the Dominican Republic, yet there was no evidence the Dominican Republic was contacted to establish jurisdiction under 46 U.S.C. §70502(c)(1)(E);[14]

---

14 Garcia asserts that 50 nautical miles is within a 200 mile "fishery zone" and that there was no evidence that the Dominican Republic was contacted. (Doc# 270, PageID.2179-2180). To the extent that this argument could be considered as falling under the more general umbrella of the jurisdictional objection asserted in Garcia's § 2255 form motion and supporting memorandum, rather than a "new" claim, the Court will address it. The MDLEA at 46 U.S.C. §70502(c)(1)(A)-(F) sets forth six paths by which the Government can establish Garcia was on board a "vessel subject to the jurisdiction of the United States." Here, the yola was a "vessel without nationality" for purposes of §70502(c)(1)(A), which renders it "a vessel subject to the jurisdiction of the United States."

Garcia has not advanced or articulated an argument that application of the MDLEA to vessels beyond the 12-mile territorial waters limit, yet in this 200-mile "fishery zone," exceeds congressional authority and is unconstitutional. Nonetheless, the Court points out that under Eleventh Circuit precedent, stateless vessels apprehended beyond the 12-mile boundary of territorial waters are considered to be in international waters and subject to MDLEA jurisdiction. *United States v. McPhee*, 336 F. 3d 1269 (11th Cir. 2003). Additionally, the Eleventh Circuit held, as a matter of first impression, that a country's Exclusive Economic Zone (beyond a nation's territorial waters but within 200 miles of the coastal baseline) is part of the "high seas" for purposes of the Felonies Clause. *United States v. Alfonso*, 104 F.4th 815, 821-823 (11th 2024). *Accord Martinez*, 172 F.4th at 1312.

(7) Jury Instruction Number 4 (prohibiting jurors from visiting or viewing premises or places involved in the case) violated the trial-by-jury requirement of the Sixth Amendment;

(8) The Court's limiting defendants' counsel to cross-examining government witnesses on jurisdictional evidence outside of the presence of the jury caused extreme prejudice and violated Eleventh Circuit precedent;

(9) The trial court's grant of the government's motion *in limine* to bar defendants from introducing evidence about the conditions of confinement on board the U.S. Coast Guard vessel was an abuse of discretion;

(10) His trial counsel failed to "stay abreast of," and bring to Movant's attention, the 2018 amendments to the First Step Act extending safety valve eligibility to cases brought under the MDLEA, which Movant would have considered in evaluating whether to enter a plea or go to trial;

(11) The prosecutor committed prosecutorial misconduct by presenting false Google satellite photos showing a larger vessel than a yola;

(12) "[T]he reading of the MDLEA as to Movant is ambiguous and violates the Supremacy Clause"; and

(13) Liberally construing his reply, Garcia seems to argue that the Coast Guard's involvement in his apprehension violated the Posse Comitatus Act.

(*See* Doc# 270, PageID.2179-2194).

"Although *Clisby* [*v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992)] requires a district court to resolve every claim properly presented in a § 2255 motion, it does not require the court to address a claim that a movant waives by failing to raise it until his reply brief." *Oliveiri v. United States*, 717 F. App'x 966, 967 (11th Cir. 2018) (per curiam) (unpublished). *See also United States v. Howard*, 28 F. 4th 180, 201, n. 6 (11th Cir. 2022) ("Arguments raised for the first time in a reply brief are not properly before a reviewing court.") (quotations and alterations omitted).

These new arguments, raised for the first time in Garcia's reply memorandum, are waived for failure to raise them in his initial § 2255 motion. *See McLellan v. United States*, No. CR 1:17-0093-KD-N, 2022 WL 3129584, at *4 (S.D. Ala. Aug. 4, 2022) (arguments raised for the first time in a §2255 reply brief are waived); *United States v. Santoriello*, 2021 WL 3549907, at *7 (N.D. Fla. July 8, 2021), *report and recommendation adopted*, No. 3:17CR57/RV/EMT, 2021 WL 3533736 (N.D. Fla. Aug. 10, 2021) (argument raised for the first time in a 2255 reply brief is waived); *McKiver v. Sec'y Fla. Dep't. of Corr.*, 991 F.3d 1357, 1364 n.1 (11th Cir. 2021) (arguments raised for the first time in a party's reply brief are waived); *see also Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (per curiam) (finding that a *pro se* litigant abandoned an issue that was not raised in his initial brief as the court does "not address arguments raised for the first time in a *pro se* litigant's reply brief"). Additionally, to the extent these claims do not implicate jurisdiction or ineffective assistance of counsel, they are procedurally defaulted because they could have been, but were not, raised on appeal.[15]

Regardless, the undersigned also finds Garcia's new claims to be without merit, for the following reasons:

---

[15] The undersigned notes that Garcia's reply raising these new claims was filed over one year after his convictions became final. However, the undersigned assumes without deciding that the new claims relate back to the timely claims in his § 2255 motion. *See Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000 ("Davenport's claims in his original § 2255 motion were timely filed, but the new claims in his amended § 2255 motion were not filed until November 6, 1997, and were untimely. Therefore, Davenport's new claims are barred unless they 'relate back' under Rule 15(c) of the Federal Rules of Civil Procedure.").

(6) The vessel was in the "fishery zone" of the Dominican Republic, yet there was no evidence the Dominican Republic was contacted to establish jurisdiction under 46 U.S.C. §70502(c)(1)(E).

Garcia asserts that 50 nautical miles is within a 200 mile "fishery zone" and that there was no evidence that the Dominican Republic was contacted. (Doc# 270, PageID.2179-2180). However, § 70502(c)(1)(A)-(F) sets forth six alternative paths by which the Government can establish a "vessel subject to the jurisdiction of the United States." Here, the yola was a determined to be a "vessel without nationality" under §70502(c)(1)(A), and that determination was upheld on appeal. Thus, it was unnecessary to determine whether the yola was also "a vessel in the territorial waters of a foreign nation if the nation consents to the enforcement of United States law by the United States" under § 70502(c)(1)(E), and any failure of counsel to address this issue was harmless.[16]

(7) Jury Instruction Number 4 (prohibiting jurors from visiting or viewing premises or places involved in the case) violated the trial-by-jury requirement of the Sixth Amendment.

Quite the opposite—unauthorized site visits by jurors are generally recognized as violative of criminal defendants' Sixth Amendment rights. *See Sherman v. Smith*,

---

[16] Garcia has not advanced or articulated an argument that application of the MDLEA to vessels beyond the 12-mile territorial waters limit, yet in this 200-mile "fishery zone," exceeds congressional authority and is unconstitutional. Nonetheless, under Eleventh Circuit precedent, stateless vessels apprehended beyond the 12-mile boundary of territorial waters are considered to be in international waters and subject to MDLEA jurisdiction. *United States v. McPhee*, 336 F. 3d 1269 (11th Cir. 2003). Additionally, the Eleventh Circuit held, as a matter of first impression, that a country's Exclusive Economic Zone (beyond a nation's territorial waters but within 200 miles of the coastal baseline) is part of the "high seas" for purposes of the Felonies Clause. *United States v. Alfonso*, 104 F.4th 815, 821-823 (11th 2024). *Accord Martinez*, 172 F.4th at 1312.

89 F.3d 1134, 1137-40 (4th Cir. 1996) (en banc) (finding that a juror's authorized site visit was not a structural trial error and instead holding that it was subject to harmless error analysis); 2 F. Lee Bailey & Kenneth J. Fishman, Criminal Trial Techniques § 53:11 ("A common violation of the rule against obtaining information other than evidence given in open court is an unauthorized view of the scene of the crime or of the weapon or instrument used in the commission of the offense. While a juror's unauthorized visit to a location relevant to a case is not usually prejudicial per se, it is a serious matter which requires an inquiry into whether an unauthorized view actually occurred and the extent of the juror's activity at the scene." (footnotes omitted)). The Court did not err in giving this instruction, and counsel did not err in failing to object to it.

(8) The Court's limiting defendants' counsel to cross-examining government witnesses on jurisdictional evidence outside of the presence of the jury caused extreme prejudice and violated Eleventh Circuit precedent.

As has been repeatedly noted, "jurisdiction of the United States with respect to a vessel subject to t[he MDLEA] is not an element of an offense[, and] jurisdictional issues arising under th[e MDLEA] are preliminary questions of law to be determined solely by the trial judge." 46 U.S.C. § 70504(a). The jury's role at trial was to determine whether the Government had proved each element of the charged offenses beyond a reasonable doubt. Evidence about a non-elemental issue, jurisdiction, was simply not relevant to the jury's deliberation, and indeed may have served to confuse the issues and/or waste time. *Cf.* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more

of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). None of the cases Garcia cites in support of this claim hold otherwise.

> (9) The trial court's grant of the government's motion *in limine* to bar defendants from introducing evidence about the conditions of confinement on board the U.S. Coast Guard vessel was an abuse of discretion.

This information was not clearly relevant to either the elements of any charged offense, or to any known defense to those charges, *see United States v. Machado*, 886 F.3d 1070, 1085 (11th Cir. 2018) ("[A] district court may exclude defense-favoring evidence where it 'does not bear a logical relationship' to an element of the offense or affirmative defense, or where the relationship between the two is simply 'too attenuated.' … This Court has emphasized that 'there comes a point—and a district court is perhaps in the best position to judge this—when the chain of inferences linking evidence and the legally relevant point to be proven is simply too long, dubious, or attenuated to require that the evidence be introduced.' " (quoting *United States v. Hurn*, 368 F.3d 1359, 1365-66 (11th Cir. 2004)); and any potential relevance was likely substantially outweighed by the danger it could "mislead[] the jury" or "confus[e] the issues…" Fed. R. Evid. 403. Moreover, even if a district court abuses its discretion in making an evidentiary ruling, that ruling will be overturned "only if it resulted in a substantial prejudicial effect." *Machado*, 886 F.3d at 1085 n.14. Garcia has failed to allege facts showing how the exclusion of evidence about his conditions of confinement on the Coast Guard vessel substantially prejudiced him at trial.

(10) His trial counsel failed to "stay abreast of," and bring to Movant's attention, the 2018 amendments to the First Step Act extending safety valve eligibility to cases brought under the MDLEA, which Movant would have considered in evaluating whether to enter a plea or go to trial.

"[T]he so-called safety-valve mechanism…operates in some circumstances to provide a guidelines sentence even though a higher mandatory minimum sentence would otherwise be required by statute." *United States v. Quirante*, 486 F.3d 1273, 1273–74 (11th Cir. 2007). More specifically, the safety-valve mechanism states that for certain offenses, "the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission…without regard to any statutory minimum sentence" if it finds that certain conditions are met. 18 U.S.C. § 3553(f). Garcia is correct that § 3553(f) applies to offenses under "section 70503 or 70506 of title 46." However, Garcia could not have benefitted from the safety-valve mechanism in this case because the low end of his sentencing guideline range was 188 months' imprisonment (*see* Doc# 158), which was still higher than the 10-year statutory minimum imprisonment term each of Garcia's convictions. *See* 46 U.S.C. § 70506(a)-(b); 21 U.S.C. § 960(b)(1).[17] Thus, any failure by counsel to advise Garcia about safety-valve eligibility was harmless.

[17] Even Garcia's preliminary guidelines calculations prepared early in the case calculated the low end of his guideline sentence as 135 months' imprisonment, still above the 10-year minimum. (*See* Doc# 51).

(11) The prosecutor committed prosecutorial misconduct by presenting false Google satellite photos showing a larger vessel than a yola.

Even accepting this claim as true, Garcia has failed to explain how he was prejudiced by the introduction of these purported false photos—the size of the involved vessel had nothing to do with either jurisdiction or any element of the case.

(12) "[T]he reading of the MDLEA as to Movant is ambiguous and violates the Supremacy Clause."

The Supremacy Clause of the U.S. Constitution, Art. VI, cl. 2, reads: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." "It is apparent that this Clause creates a rule of decision: Courts 'shall' regard the 'Constitution,' and all laws 'made in Pursuance thereof,' as 'the supreme Law of the Land.' They must not give effect to state laws that conflict with federal laws." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324, 135 S. Ct. 1378, 191 L. Ed. 2d 471 (2015). Thus, the Supremacy Clause only places limits on state law, and does not constrain federal laws such as the MDLEA. To the extent Garcia argues the MDLEA "is ambiguous" as to him, he fails to develop this argument or cite any authority in support. Accordingly, Garcia has also not shown that counsel erred by failed to raise either of these issues.

(13) Liberally construing his reply, Garcia seems to argue that the Coast Guard's involvement in his apprehension violated the Posse Comitatus Act.

The Posse Comitatus Act states: "Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army, the Navy, the Marine Corps, the Air Force, or the Space Force as a posse comitatus or otherwise to execute the laws shall be fined under this title or imprisoned not more than two years, or both." 18 U.S.C. § 1385. The Coast Guard is conspicuously excluded from that statute. Moreover, the Coast Guard is statutorily authorized to "make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States." 14 U.S.C. § 522(a).

**d. Motions "for Disposition on Writ of Habeas Corpus Under 28 U.S.C. S. 2255"**

Subsequent to filing his reply, Garcia filed two motions entitled "Motion for Disposition on Writ of Habeas Corpus Under 28 U.S.C.S. 2255" (Docs# 312, 321). In both, Garcia argues for the first time that the Government lacked standing under Article III of the Constitution to prosecute him for his crimes. In the second motion (Doc# 321), he also moves for the recusal of the assigned District Judge, claiming that the judge "[h]as acted with dileberate [sic] discriminatory Bias and Impropriety" by not "expedit[ing]" a ruling on his § 2255 motion in the face of despite his claims of multiple jurisdictional defects.

The undersigned construes the standing argument in these motions as an additional § 2255 ground for relief.[18] However, the undersigned is not convinced that Garcia's standing claim has merit. Garcia cites no authority holding that the Government is required to satisfy Article III standing in order to prosecute a crime, and the weight of authority indicates the opposite. *See Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771, 120 S. Ct. 1858, 146 L. Ed. 2d 836 (2000) ("the injury to its sovereignty arising from violation of its laws…suffices to support a criminal lawsuit by the Government" (dicta)); *Sierra v. City of Hallandale Beach, Fla.*, 996 F.3d 1110, 1125 (11th Cir. 2021) (Newsom, J., concurring) ("Of course, no one doubts—or ever doubted—that federal criminal prosecutions are 'Cases' within the meaning of Article III."); F. Andrew Hessick & Sarah A. Benecky, *Standing and Criminal Law*, 49 B.Y.U. L. Rev. 961, 975 (2024) ("[C]ourts do not require the United States to satisfy [Article III] standing requirements in criminal cases. In their view, criminal prosecutions seek to vindicate the 'sovereign' interests of the United States, and the various requirements of standing do not apply when the United States files an action to vindicate a sovereign interest.").

---

[18] The earlier motion, dated August 14, 2025 (Doc# 312, PageID.2482), is deemed filed well over 3 years after Garcia's convictions became final, and nothing in the record indicates that Garcia is entitled to have the one-year statute of limitations for this claim to run from any of the other triggering dates in § 2255(f). Nevertheless, the undersigned assumes without deciding that this claim relates back to Garcia's timely jurisdictional claims. *See Davenport*, 217 F.3d at 1344 (" 'Relation back' causes an otherwise untimely claim to be considered timely by treating it as if it had been filed when the timely claims were filed. Therefore, the new claims in Davenport's amended § 2255 motion will relate back and be considered timely if they 'arose out of the conduct, transaction, or occurrence' set forth in his original § 2255 motion.").

As for his argument for recusal, Garcia has not shown that he was entitled to expedited review of any of his jurisdictional claims, which as explained above were either already rejected on appeal or were otherwise meritless. More generally, where, as here, "the defendant's chance to appeal has been waived or exhausted,…we are entitled to presume he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present his federal claims to a federal forum." *United States v. Frady*, 456 U.S. 152, 164, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982). Moreover, Garcia has failed to substantiate his claims that the delay in ruling on his § 2255 motion was the result of either "bias" or "impropriety." *See Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir. 2000) ("To warrant recusal…, the moving party must allege facts that would convince a reasonable person that bias actually exists."). Mere dissatisfaction with how a judge presides over a case is not enough. *Cf. Hamm v. Members of Bd. of Regents of State of Fla.*, 708 F.2d 647, 651 (11th Cir. 1983) ("Neither a trial judge's comments on lack of evidence, rulings adverse to a party, nor friction between the court and counsel constitute pervasive bias").

Accordingly, Garcia's "Motion[s] for Disposition on Writ of Habeas Corpus Under 28 U.S.C.S. 2255" (Docs# 312, 321) are due to be **DENIED** to the extent they request dismissal of his indictment and recusal of the assigned District Judge, and are moot as to the request for disposition in light of this Report and Recommendation.

Garcia has not shown entitlement to relief on any of his claims. Accordingly, his § 2255 motion is due to be **DENIED** and **DISMISSED with prejudice**.

**e. Certificate of Appealability**

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" in a § 2255 proceeding. Rule 11(a) of the Rules Governing Section 2255 Proceedings. "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court." 28 U.S.C. § 2253(c)(1)(A).

Where the district court "has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). Where habeas relief is denied on procedural grounds without reaching the merits of the underlying constitutional claim(s), "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id. See also Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (citations omitted and punctuation modified)). In all cases, "[a] certificate of

appealability may issue 'only if the applicant has made a substantial showing of the denial of a constitutional right.' " *Spencer v. United States*, 773 F.3d 1132, 1137 (11th Cir. 2014) (en banc) (quoting 28 U.S.C. § 2253(c)(2)). While "a COA does not require a showing that the appeal will succeed[,]" a "prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El*, 537 U.S. at 337-38 (quotations omitted).

Upon due consideration, the undersigned finds that Garcia should be **DENIED** a certificate of appealability in conjunction with the dismissal of the present §2255 motion because he has failed to make a substantial showing of the denial of a constitutional right for any of the grounds raised, and jurists of reason would not find it debatable whether the Court is correct in finding those grounds meritless.[19]

**f. Appeal *In Forma Pauperis***

"An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." 28 U.S.C. §1915(a)(3).[20]

---

[19] Rule 11(a) of the Rules Governing Section 2255 Proceedings further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation regarding the issuance of a certificate of appealability, the objecting party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation, *see infra*. Should the Court ultimately deny a certificate of appealability as to some or all grounds for relief, the movant "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts.

[20] A district court's finding "that an appeal would not be in good faith because no certificate of appealability had been issued … is not enough to explain why the appeal on the merits would not be in good faith, because the standard governing the issuance of a certificate of appealability is not the same as the standard for determining

> A party demonstrates good faith by seeking appellate review of any issue that is not frivolous when examined under an objective standard. *See Coppedge v. United States*, 369 U.S. 438, 445, 82 S. Ct. 917, 921, 8 L. Ed. 2d 21 (1962). An issue is frivolous when it appears that "the legal theories are indisputably meritless." *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (citations omitted). In other words, an IFP action is frivolous, and thus not brought in good faith, if it is "without arguable merit either in law or in fact." *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001). More specifically, "arguable means capable of being convincingly argued." *Sun v. Forrester*, 939 F.2d 924, 925 (11th Cir. 1991) (internal quotations and citations omitted). Nevertheless, where a "claim is arguable, but ultimately will be unsuccessful," it should be allowed to proceed. *Cofield v. Ala. Pub. Serv. Comm'n*, 936 F.2d 512, 515 (11th Cir. 1991).

*Ghee v. Retailers Nat. Bank*, 271 F. App'x 858, 859-60 (11th Cir. 2008) (per curiam) (unpublished).

Having considered the issues raised as set forth above, the undersigned will recommend the Court certify that any appeal by Garcia of the denial of the present § 2255 motion would be without merit and therefore not taken in good faith, thus denying him entitlement to appeal *in forma pauperis*.[21]

## IV. *Conclusions and Recommendations*

In accordance with the foregoing analysis, the undersigned **RECOMMENDS** that Garcia's "Motion[s] for Disposition on Writ of Habeas Corpus Under 28 U.S.C.S. 2255" (Docs# 312, 321) be found **MOOT** to the extent they request disposition of the

---

whether an appeal is in good faith. It is more demanding." *Walker v. O'Brien*, 216 F.3d 626, 631 (7th Cir. 2000).

[21] Should the Court adopt this recommendation and deny leave to appeal *in forma pauperis*, the movant may file a motion to proceed on appeal *in forma pauperis* with the Eleventh Circuit Court of Appeals in accordance with Federal Rule of Appellate Procedure 24(a)(5).

§ 2255 motion and be otherwise **DENIED**; that Garcia's § 2255 motion dated April 26, 2023 (Doc# 248), be **DENIED** and **DISMISSED with prejudice**; that Garcia be **DENIED** a Certificate of Appealability in relation to this dismissal; and that judgment be accordingly set out by separate document under Federal Rule of Civil Procedure 58.[22] The undersigned further **RECOMMENDS** that the Court certify that any appeal by Garcia of the denial of the present § 2255 motion would be without merit and therefore not taken in good faith, thus denying him entitlement to appeal *in forma pauperis*.

**NOTICE OF THE RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within 14 days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. §636(b)(1); Rule 8(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts; S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1)

[22] See Rule 12 of the Rules Governing Section 2255 Proceedings for the United States District Courts ("The Federal Rules of Civil Procedure…, to the extent that they are not inconsistent with any statutory provision or these rules, may be applied to a proceeding under these rules."); *Sassoon v. United States*, 549 F.2d 983 (5th Cir. 1977) (applying Rule 58's separate-document requirement in a § 2255 proceeding); *United States v. Hassebrock*, 21 F.4th 494, 497 (7th Cir. 2021) (in holding that Rule 58 applied to coram nobis proceedings, nothing that "[m]any [other] circuits have applied Rule 58 to § 2255 motions").

waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**NOTICE TO *PRO SE* § 2255 MOVANT**

Movant is advised that "[a]ll persons proceeding *pro se* shall be bound by, and must comply with, all Local Rules of this Court," as well as the applicable federal rules of procedure, "unless excused by Court order." S.D. Ala. GenLR 83.5(a). Federal Rule of Civil Procedure 11 requires that any paper filed with the Court be signed by him personally and provide his "address, e-mail address, and telephone number."[23]

[23] Movant must handwrite his/her signature/mark (as opposed to, for example, typing his name) in order to satisfy Rule 11(a). *See Becker v. Montgomery*, 532 U.S. 757, 763–64, 121 S. Ct. 1801, 149 L. Ed. 2d 983 (2001) ("Becker maintains that typing one's name satisfies the signature requirement and that his original notice of appeal, containing his name typed above "(Counsel of Record)," met Civil Rule 11(a)'s instruction…[H]owever, we are not disposed to extend the meaning of the word 'signed,' as that word appears in Civil Rule 11(a), to permit typed names. As Rule 11(a) is now framed, we read the requirement of a signature to indicate, as a signature requirement commonly does, and as it did in John Hancock's day, a name handwritten (or a mark handplaced).").

Fed. R. Civ. P. 11(a). *See also* Rule 12 of the Section 2255 Rules ("The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."). "The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." Fed. R. Civ. P. 11(a).

Movant is also advised that, under this Court's local rules, "[a]ny person proceeding *pro se* must, at all times during the pendency of the action to which he or she is a party, keep the Clerk informed of his or her current address and … must promptly notify the Clerk of any change of address … Failure to comply with this Rule may result in sanction, including dismissal of a *pro se* plaintiff's action…" S.D. Ala. GenLR 83.5(b). Additionally, any "request for Court action must be presented by motion and may not be presented by informal means such as a letter." S.D. Ala. GenLR 7. *See also* Fed. R. Civ. P. 7(b).

**DONE** this the **22nd** day of **July 2026.**

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**